UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Ninilchik Traditional Council, ) | |
| Plaintiff, ) | 3:15-cv-00205 JWS |
| vs. ) | ORDER AND OPINION |
| Tim Towarak, *et al.*, ) | [Re: Motion at Docket 10] |
| Defendants. ) | |

## I.  MOTION PRESENTED

At docket 10 defendants Tim Towarak, Sally Jewell, and Tom Vilsack ("Defendants") move to dismiss the complaint of plaintiff Ninilchik Traditional Council ("NTC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  NTC opposes at docket 21; Defendants reply at docket 32.

At docket 20 the court granted Defendants' motion for judicial notice of the nine exhibits they attached to their motion to dismiss (Exhibits A-I); at docket 37 the court granted NTC's motion for judicial notice of Exhibits 1-7 and 9 to NTC's opposition but declined to take judicial notice of Exhibit 8; and at docket 35 the court granted NTC leave to file a surresponse, which NTC filed at docket 36.

Oral argument was heard on April 14, 2016.

## II. BACKGROUND

In 1980 Congress passed Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA")[1] "to protect the subsistence way of life in the face of Alaska's growing population and the resultant pressure on fish and wildlife populations."[2] "Congress' aim in passing ANILCA was to ensure a way of life 'essential to Native physical, economic, traditional, and cultural existence and to non-Native physical, economic, traditional, and social existence.'"[3] Among other things, Section 804 of ANILCA provides that on public lands the taking of fish for "nonwasteful subsistence uses shall be accorded priority" over the taking of fish for other purposes.[4]

To advance ANILCA's directives, Congress authorized the Secretary of the Interior and the Secretary of Agriculture to promulgate regulations.[5] One of these regulations established a Federal Subsistence Board ("Board"),[6] which is charged with administering "the federal subsistence program at the heart of Title VIII."[7] The Board's powers include the power to issue "regulations for the management of subsistence taking and uses of fish and wildlife on public lands"[8] and to take emergency action to close public lands for the taking of fish or to modify the requirements for subsistence

--------

[1]16 U.S.C. §§ 3111–26.

[2]*Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1091 (9th Cir. 2008) (citing 16 U.S.C. § 3111(3)).

[3]*Ninilchik Traditional Council v. United States*, 227 F.3d 1186, 1189 (9th Cir. 2000) (quoting 16 U.S.C. § 3111(1)).

[4]16 U.S.C. § 3114.

[5]*Fed. Subsistence Bd.*, 544 F.3d at 1092 (citing 16 U.S.C. § 3124)).

[6]50 C.F.R. § 100.10.

[7]*Fed. Subsistence Bd.*, 544 F.3d at 1091.

[8]50 C.F.R. § 100.10(d)(4)(I).

-2-

and/or non-subsistence take.[9]  In 2002 the Board delegated its authority over in-season management of the federal subsistence fishery in the Kenai National Wildlife Refuge to the U.S. Fish and Wildlife Service, Kenai Fishery Resources Office.[10]

The three defendants in this action are the Secretary of Interior, the Secretary of Agriculture, and the Board's Chairman.  The plaintiff is NTC, the governing body of Ninilchik Village,[11] a federally-recognized Indian tribe[12] whose members have a customary and traditional use of all fish in the Kasilof and Kenai River drainages.[13] Although Ninilchik Village members share "in an annual subsistence allocation of salmon from three federal fisheries on the Kenai River,"[14] they allege that they have "been unable to harvest this subsistence salmon allocation" due to "restrictive federal subsistence regulations limiting methods and means of harvest, and restrictive and arbitrary federal in-season subsistence management actions."[15]

In March 2014 NTC submitted two proposed regulations that would authorize residents of Ninilchik to operate two community subsistence gillnets: one in the Kenai River and the other in the Kasilof River.[16]  The Southcentral Regional Advisory Council, which is a regional advisory council established under Section 805 of ANILCA to

---

[9]50 C.F.R. § 110.19(a).

[10]Doc. 1 at 9 ¶ 25; Doc. 14-1 at 2-7.

[11]Doc. 1 at 2.

[12]Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 81 Fed. Reg. 5019-02 (Jan. 29, 2016).

[13]Doc. 1 at 3 ¶ 10; Doc. 21 at 4.

[14]Doc. 21 at 4.  *See* 50 C.F.R. § 100.27(e)(10)(iv)(D)(3).

[15]Doc. 1 at 4 ¶ 11.

[16]*Id.* at 6 ¶ 18.  NTC's Kenai River gillnet proposal is at Doc. 10-1.

provide opinions and recommendations to the Board on subsistence matters,[17]

considered NTC's two gillnet fishery proposals and recommended that the Board adopt

both.[18] The Board voted to adopt NTC's proposals[19] and, after a five-month notice and

comment period, promulgated final regulations authorizing the two gillnet fisheries.[20]

Under these regulations a Kasilof River gillnet would be allowed between July 1

and 31 and a Kenai River gillnet would be allowed between June 15 and August 15 for

the harvest of Sockeye, Chinook, Coho, and Pink salmon, unless fishing is closed by

"Federal Special Action."[21] One permit for each net would be awarded by the federal in-

season fishery manager based on the submission of a written operational plan.[22]

During all relevant times, that in-season fishery manager was Jeffry Anderson

("Anderson").[23]

On May 27, 2015, NTC submitted to Anderson an operational plan for the Kenai

and Kasilof gillnet fisheries.[24] Before deciding either submission, Anderson issued an

emergency special action closing the federal subsistence fishery from June 18 until

---

[17]16 U.S.C. § 3115. "The Secretary may choose not to follow any recommendation [of a regional advisory council] which he determines is not supported by substantial evidence, violates recognized principles of fish and wildlife conservation, or would be detrimental to the satisfaction of subsistence needs. If a recommendation is not adopted by the Secretary, he shall set forth the factual basis and the reasons for his decision." *Id.* § 3115(c).

[18]Doc. 1 at 6-8 ¶¶ 19, 21.

[19]*Id.* at 8-9 ¶ 23.

[20]*Id.* at 9 ¶ 24. *See* Subsistence Management Regulations for Public Lands in Alaska—2015-16 and 2016-17 Subsistence Taking of Fish Regulations, 80 Fed. Reg. 28187-01 (May 18, 2015) (The regulations regarding the Kasilof River fishery are codified at 36 C.F.R. § 242.27(e)(10)(iv)(I); 50 C.F.R. § 100.27(e)(10)(iv)(I). The regulations regarding the Kenai River fishery are codified at 36 C.F.R. § 242.27(e)(10)(iv)(J); 50 C.F.R. § 100.27(e)(10)(iv)(J)).

[21]80 Fed. Reg. at 28192-93.

[22]*Id.*

[23]Doc. 1 at 9 ¶ 25.

[24]*Id.* ¶ 26.

-4-

August 15 for early-run Chinook salmon in all federal public waters in the Kenai River downstream of Skilak Lake.[25]

On July 13, "less than a month before the closure of the 2015 federal subsistence fishing season," Anderson approved NTC's operational plan for the Kasilof River gillnet and issued a permit to NTC.[26] But Anderson still did not act on NTC's request for a Kenai River gillnet permit.[27] In a July 16 letter Anderson explained that he did not anticipate approving a Kenai River permit for the 2015 fishing season "because of the urgent need to protect early-run Chinook [s]almon."[28]

In late July NTC wrote two letters to the Board seeking relief from Anderson's emergency closure and failure to issue the Kenai permit.[29] Specifically, NTC asked the Board to (1) overturn Anderson's emergency closure;[30] (2) negate his refusal to authorize an operational plan for a Kenai gillnet fishery for the 2015 fishing season;[31] (3) rescind his authority over Cook Inlet Area subsistence fishing;[32] and (4) remove language in the Kenai River regulation that empowers Anderson to block the issuance of a gillnet permit.[33] The Board convened on July 28 and considered NTC's requests.[34]

---

[25]Id. at 10 ¶ 27. The Special Action notice is at Doc. 10-4.

[26]Id. at 11 ¶ 31.

[27]Id. at 12 ¶ 34.

[28]Doc. 21-4 at 5.

[29]Doc. 1 at 12 ¶ 36. These two letters are at Doc. 21-4 at 1-29, Doc. 21-5 at 1-5.

[30]Doc. 21-4 at 3.

[31]Id.; Doc. 21-5 at 3.

[32]Doc. 21-5 at 3-4.

[33]Id.

[34]Doc. 1 at 13 ¶ 37.

After hearing testimony from Anderson in support of his actions[35] and from NTC in opposition,[36] the Board voted not to grant NTC any of the relief it had requested.[37]

NTC's two-count complaint, filed in October 2015, alleges that Defendants' actions violate Section 804 of ANILCA and the Administrative Procedure Act ("APA")[38] in relation to three events: (1) the Board's 2002 delegation of authority to the in-season manager; (2) Anderson's 2015 subsistence fishery closure; and (3) Defendants' implementation of the Kenai river gillnet fishery regulation.

## A. NTC's Seven ANILCA Claims

With regard to the 2002 delegation, NTC alleges that Defendants violated ANILCA by delegating in-season management authority without any substantive standards (claim one)[39] and then "failed to exercise any independent oversight" over the in-season manager's actions (claim two).[40]

With regard to the 2015 closure, NTC alleges that Defendants violated ANILCA by allowing Anderson to close the subsistence fishery and keep it closed for the entire fishing season (claim three).[41]

With regard to the Kenai gillnet fishery, NTC alleges that Defendants violated ANILCA when the Board delegated authority to Anderson to "develop an operational plan" for the Kenai gillnet fishery without "any standards or oversight" (claim four),[42]

---

[35]Doc. 10-3 at 11-15.

[36]*Id.* at 16-28.

[37]Doc. 1 at 14 ¶ 41. *See also* doc. 10-3 at 29-33.

[38]5 U.S.C. § 706.

[39]Doc. 1 at 15 ¶ 47.

[40]*Id.*

[41]*Id.* at 16 ¶ 48.

[42]*Id.* ¶ 49.

when Anderson failed to decide NTC's gillnet permit application (claim five),[43] and when the Board then refused to revoke Anderson's authority over the Kenai gillnet fishery (claim six).[44]

Finally, NTC alleges generally that the Board violated ANILCA by failing to "take corrective action" to prevent Anderson's "continued arbitrary and capricious action[s]" and to "ensure implementation" of the Kenai gillnet fishery (claim seven).[45]

## B.    NTC's Four APA Claims

NTC's APA claims allege that: (1) "Defendants' actions and failure to act regarding [Anderson's 2015] closure of the Kenai River federal subsistence fishery" was "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with 5 U.S.C. § 706(2)(A);"[46] (2) Anderson's "failure to develop an operation plan and issue a permit for" the Kenai gillnet was "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with 5 U.S.C. § 706(2)(A);"[47] (3) the Board "illegally and arbitrarily ignored its own record and acted in such a way as to prevent implantation of its own regulation;"[48] and (4) the Board failed to "prescribe standards and a process for the in-season fishery management actions that are consistent with the requirements of the APA."[49]

---

[43]*Id.*

[44]*Id.* at 17 ¶ 50.

[45]*Id.* ¶ 51.

[46]*Id.* at 17-18 ¶ 53.

[47]*Id.*

[48]*Id.* at 18 ¶ 54.

[49]*Id.* ¶ 55.

### III.  STANDARDS OF REVIEW

**A.     Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction.  In order to survive a defendant's motion to dismiss, the plaintiff has the burden of proving jurisdiction.[50]

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual."[51]  Where the defendant brings a facial attack on the subject matter of the district court, the court assumes the factual allegations in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor.[52]  The court does not, however, accept the truth of legal conclusions cast in the form of factual allegations.[53]

"With a factual Rule 12(b)(1) attack, however, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment.  It also need not presume the truthfulness of the plaintiffs' allegations."[54]

**B.     Rule 12(b)(6)**

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[55]  To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the

---

[50]*Tosco v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2000).

[51]*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[52]*Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

[53]*Id.*

[54]*White*, 227 F.3d at 1242 (9th Cir. 2000) (citations omitted).

[55]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

-8-

opposing party to defend itself effectively."[56]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[57]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[58]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[59]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[60]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[61]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[62]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[63]

Ordinarily, if matters outside the pleadings are "presented to and not excluded by the court," a Rule 12(b)(6) motion "must be treated as one for summary judgment under Rule 56" and the parties "must be given a reasonable opportunity to present all the

---

[56]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[57]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[58]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[59]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[60]*Id.*

[61]*Id.* (citing *Twombly*, 550 U.S. at 556).

[62]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[63]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

-9-

material that is pertinent to the motion."[64]   There are two exceptions to this rule, however.  "First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment."[65]   Second, "a court may take judicial notice of 'matters of public record.'"[66]

## IV.  DISCUSSION

### A.    Defendants' Jurisdictional Attacks

NTC's complaint alleges that this court has subject matter jurisdiction over its ANILCA claims under 28 U.S.C. § 1331,[67] 28 U.S.C. § 1362,[68] and Section 807 of ANILCA,[69] which states in pertinent part that an organization aggrieved by a failure of the federal government "to provide for the priority for subsistence uses" set out in Section 804 "may, upon exhaustion of any State or Federal (as appropriate) administrative remedies which may be available, file a civil action in the United States District Court for the District of Alaska to require such actions to be taken as are necessary to provide for the priority."[70]   NTC alleges that this court has subject matter

---

[64]Fed. R. Civ. P. 12(d).

[65]*Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation omitted).

[66]*Id.* at 688-89 (quoting Fed. R. Evid. 201).

[67]"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

[68]"The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1362.

[69]Doc. 1 at 2 ¶ 2.

[70]16 U.S.C. § 3117.

jurisdiction over its APA claims under 28 U.S.C. § 1331, 28 U.S.C. § 1362, and 5 U.S.C. § 706.[71]

Defendants assert that this court lacks jurisdiction over: (1) all of NTC's claims that relate to the Kenai gillnet fishery[72] because they are not ripe until all third parties exhaust their administrative challenges to the regulation that authorizes that fishery; (2) NTC's challenges to the Board's 2002 delegation of authority to the U.S. Fish and Wildlife Service because that was not a final agency action; (3) NTC's challenges to the Board's 2002 delegation of authority because those challenges are untimely; (4) NTC's challenges to the Board's decision not to rescind Anderson's authority because that decision is committed to the Board's discretion by law; (5) NTC's challenge to the emergency closure order because NTC lacks standing; and (6) NTC's various challenges that seek orders compelling the Board to act in ways that it is not legally required to act.

**1.    NTC's gillnet-fishery-related claims are ripe**

Ripeness is "peculiarly a question of timing,"[73] designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

---

[71]Doc. 1 at 2 ¶ 2.  5 U.S.C. § 706 pertains to the scope of judicial review of agency actions under the APA; it does not give the federal courts jurisdiction.  *See Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil & Gas Conservation of State of Montana*, 792 F.2d 782, 793 (9th Cir. 1986) ("The Administrative Procedure Act does *not* provide an independent basis of jurisdiction to review agency actions.") (emphasis in original) (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977)).  *See also Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) ("[T]he APA prescribes standards for judicial review of an agency action, once jurisdiction is otherwise established.").

[72]Defendants specifically identify NTC's ANILCA claims (or portions of them) at paragraphs 46-51 of their complaint and its APA claims at paragraphs 52 through 53.  Doc. 10 at 14.

[73]*Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140 (1974).

-11-

disagreements."[74]  "Because ripeness goes to the exercise of subject matter jurisdiction, a ripeness challenge is properly raised under Rule 12(b)(1)."[75]

"Ripeness has both constitutional and prudential components."[76]  "The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with" the "injury in fact" analysis for Article III standing.[77]  "Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are 'definite and concrete, not hypothetical or abstract.'"[78]  Defendants do not overtly argue that the constitutional ripeness test is not met here.[79]  Instead, they focus their arguments on ripeness' prudential component.

Analysis of ripeness' prudential component "is guided by two overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"[80]  "A claim is fit for decision if the issues

---

[74]*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967).

[75]*Auerbach v. Board of Educ. of the Harborfields Cent. School Dist. of Greenlawn*, 136 F.3d 104, 108-109 (2d Cir. 1998).

[76]*Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir.1993).

[77]*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  For purposes of Article III standing an "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted).

[78]*Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (quoting *Thomas*, 220 F.3d at 1139)).

[79]Doc. 10 at 15-17.

[80]*Thomas*, 220 F.3d at 1141 (quoting *Abbott Laboratories*, 387 U.S. at 149).

-12-

raised are primarily legal, do not require further factual development, and the challenged action is final."[81]

In accordance with 50 C.F.R. § 100.18(a)(5),[82] the Board issued the Kenai gillnet regulation as a "final rule."[83] Defendants nonetheless argue that the regulation is not final because "multiple parties have filed requests for reconsideration, and that reconsideration process is still underway."[84] They argue that the regulation's lack of finality also renders speculative any hardship that NTC would face if the court withholds consideration of their claims.[85] According to Defendants, no party may obtain judicial review of a Board regulation so long as some other party has sought administrative reconsideration of that regulation.

Defendants rely primarily on *I.C.C. v. Bhd. of Locomotive Engineers*,[86] *Acura of Bellevue v. Reich*,[87] and *Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt*,[88] cases that hold that a party renders an administrative decision nonfinal for purposes of judicial review by seeking administrative relief from that decision. These cases are not on all fours, however, because none addresses the question presented by Defendants:

---

[81]*Winter v. California Medical Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir.1989) (internal quotation marks and citation omitted).

[82]"Following consideration of the proposals the Board shall publish final regulations pertaining to subparts C and D of this part in the Federal Register." 50 C.F.R. § 100.18(a)(5).

[83]Doc. 21-2 at 1 ("ACTION: Final rule.").

[84]Doc. 10 at 15.

[85]*Id.* at 15-16.

[86]482 U.S. 270, 284 (1987) (holding that labor organization's "timely petition for administrative reconsideration stayed the running of the Hobbs Act's limitation period until the petition had been acted upon by the Commission.").

[87]90 F.3d 1403, 1408 (9th Cir. 1996) ("The Administrator's decision was an interim determination that the dealers' employment of minor lot attendants violated child labor laws. The dealers' exceptions will be heard by an ALJ, who has de novo review.").

[88]606 F.3d 1058, 1064 (9th Cir. 2010) (same).

-13-

whether one party's administrative appeal of an agency's action renders that action nonfinal as to all third parties.

In *Public Citizen v. Mineta*,[89] the Ninth Circuit answered that question in the negative. The plaintiffs there challenged a final rule of the National Highway Traffic Safety Administration ("NHTSA"). The relevant statute required such challenges to be brought within 59 days[90] and, as in *Locomotive Engineers*, the court held that the statute of limitations was tolled for the parties who petitioned for reconsideration. The NHTSA argued that under its regulation, 49 C.F.R. § 553.39, tolling did not apply to parties who did not petition for reconsideration. Those non-petitioning parties challenged NHTSA's regulation, arguing that its drafter misinterpreted the case law.[91]

The Ninth Circuit affirmed NHTSA's interpretation of the case law, holding that "'finality with respect to agency action is a party-based concept.'"[92] "Although a petition for reconsideration renders an agency order non-final as to the party seeking reconsideration, it does not affect the right to seek judicial review by those persons who did not try to obtain reconsideration . . . ."[93] The Ninth Circuit's holding in *Mineta* is in line with case law from other circuits, including the D.C. Circuit,[94] the Eighth Circuit,[95]

---

[89]343 F.3d 1159 (9th Cir. 2003).

[90]49 U.S.C. § 30161.

[91]343 F.3d at 1168 (the non-petitioners argued that NHTSA "mistakenly interpreted the case law that guided its understanding in drafting section 553.39.").

[92]*Pub. Citizen Inc. v. Mineta*, 343 F.3d 1159, 1170 (9th Cir. 2003) (quoting *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1994)).

[93]*Mineta*, 343 F.3d at 1170.

[94]*See, e.g., Bellsouth*, 17 F.3d at 1489-90.

[95]*Winter v. I.C.C.*, 851 F.2d 1056, 1062 (8th Cir. 1988) ("Winter correctly notes that in multi-party proceedings one party may seek judicial review of an agency decision while another party seeks administrative reconsideration, resulting in both tribunals having jurisdiction. An agency decision may thus be final for one purpose yet nonfinal for another purpose.").

-14-

and the Third Circuit.[96]  In *West Penn*, the Third Circuit explained that interpreting finality as a party-based concept "serves the interests of fairness by allowing parties seeking judicial review to get it, rather than making them dependent on the whims of other parties."[97]

Defendants argue that the Board's regulation is different from the regulation at issue in *Mineta* because it states that the agency's decision is final only "*if* the request for reconsideration is denied,"[98] which Defendants interpret to mean all requests for reconsideration, even those filed by third parties.  It contends that this interpretation "is entitled to strong deference and may not be overturned unless plainly erroneous or inconsistent with the language of the regulation."[99]

Defendants' interpretation of 50 C.F.R. § 100.20(g) fails even under this highly deferential standard because it is inconsistent with the language of that regulation.  50 C.F.R. § 100.20(g) does not state that a Board action is not final until all third-party requests for reconsideration are resolved; it states that if a party requests reconsideration and the Board denies that request, the Board's denial "represents the final administrative action"[100] on that specific request.

2.   **The Board's delegation of in-season management authority to the U.S. Fish and Wildlife Service was a final agency action**

Defendants cite language from several sections of NTC's complaint and assert that NTC "seems to challenge" the Board's delegation of authority to the in-season

---

[96]*W. Penn Power Co. v. U.S. E.P.A.*, 860 F.2d 581, 586 (3d Cir. 1988) ("[F]inality with respect to agency action is a party-based concept.").

[97]*Id.*

[98]Doc. 32 at 9 (citing 50 C.F.R. § 100.20(g)) (emphasis in original).

[99]*Id.* at 10 (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

[100]50 C.F.R. § 100.20(g).

-15-

manager to issue emergency closure orders[101] or to approve an operational plan for the Kenai gillnet fishery.[102]  Defendants argue that this court lacks subject matter jurisdiction over such challenges because these delegations were not final agency actions, and therefore they are unreviewable under § 704 of the APA.[103]

NTC disputes Defendants' description of its complaint,[104] stating that it is not challenging the Board's general ability to delegate its authority, but rather the Board's specific failure to rescind Anderson's authority over "the 2015 Kenai gillnet operation plan" and "the subsistence fishery in 2015."[105]  In addition, NTC states that its complaint challenges the Board's "implementation of its delegation of authority through the 2002 letter."[106]  In reply, Defendants do not contend that the first two agency actions that NTC identifies—the Board's decisions not to rescind Anderson's authority over the Kenai gillnet permit or over emergency in-season closures—are not final agency actions.  But Defendants maintain that the Board's 2002 delegation of authority to the U.S. Fish and Wildlife Service was not a final agency action.[107]

Under the APA, 5 U.S.C. § 704, "agency action is subject to judicial review only when it is either: (1) made reviewable by statute; or (2) a 'final' action 'for which there is

---

[101]Doc. 10 at 17 (citing Doc. 1 at 9 ¶ 25; 16 ¶ 48).

[102]*Id.* (Defendants cite no part of NTC's complaint in support of this assertion).

[103]*Id.* at 18 (citing the APA, 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177 (1997) (discussing when an agency action is final for purposes of the APA)).  Because the APA is not jurisdictional, the court considers this challenge to fall under Rule 12(b)(6), not Rule 12(b)(1). *See Califano v. Sanders*, 430 U.S. 99, 107 (1977).

[104]Doc. 21 at 14-15.

[105]*Id.* at 15 (emphasis added) (citing NTC's ANILCA cause of action, Doc. 1 at 16-17 ¶¶ 48, 50-51).

[106]Doc. 21 at 15 (citing Doc. 1 at 14, 15-16 ¶¶ 42, 47-48).

[107]Doc. 32 at 17.

-16-

no other adequate remedy in a court.'"[108]  NTC does not contend that ANILCA or any other statute makes reviewable the Board's decision to delegate its authority to the in-season manager.  Instead, it argues that this delegation was a final agency action under § 704 of the APA.[109]

To determine when an agency action is final, courts look to whether (1) the action marks "the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and (2) it is an action "by which rights or obligations have been determined, or from which legal consequences will flow."[110]  Defendants argue that neither prong of this test is satisfied here because delegations of authority to individuals do not mark the consummation of an agency's decisionmaking process, nor do they "have any legal consequences for parties outside the agency."[111]

Defendants' argument lacks merit.  The 2002 delegation of authority meets both prongs of the *Bennett* test.  First, the delegation was not tentative or interlocutory in nature.  It conclusively and immediately provides the U.S. Fish and Wildlife Service with delegated authority to issue special actions affecting federal fisheries.[112]  Second, legal consequences flow from the 2002 delegation letter—namely, the delegatee obtained the legal right to issue special actions.  Defendants' argument that this delegation was not final because it did not affect NTC's rights confuses finality with the separate question whether NTC's harm is fairly traceable to that action.[113]

---

[108]*Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010) (quoting 5 U.S.C. § 704).

[109]Doc. 21 at 16.

[110]*Bennett*, 520 U.S. at 177–78 (internal quotation marks and citation omitted).

[111]Doc. 10 at 18-20; Doc. 32 at 17.

[112]Doc. 14-1 at 3.

[113]*See Bennett*, 520 U.S. at 177.

-17-

**3.    The court cannot yet decide whether NTC's challenges to the Board's 2002 delegation of authority are timely**

NTC's complaint alleges that the Board violated ANILCA in 2002 when it delegated in-season fishery management authority to the U.S. Fish and Wildlife Service without "any substantive standards to ensure that in-season management actions were consistent with providing for subsistence uses and were supported by recognized principles of fish management and facts."[114]  It also alleges that this standardless delegation violates the APA.[115]  Defendants argue that this court lacks jurisdiction over these claims because they are untimely under 28 U.S.C. § 2401(a).[116]  NTC correctly notes that the Ninth Circuit has held that "§ 2401(a)'s six-year statute of limitations is not jurisdictional."[117]  Thus, the court will consider Defendants' argument in the context of Rule 12(b)(6).

NTC argues that its challenges to the 2002 delegation are timely under the discovery rule, which provides that an action accrues "'when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its cause.'"[118]  It asserts that it did not discover the injury it suffered in 2002 until "June or July of 2015," when the in-season manager acted without the guidance of substantive standards in closing the subsistence fishery.[119]  Defendants respond by arguing that the

---

[114]Doc. 1 at 15 ¶ 47.  *See also* Doc. 21 at 15 (citing Doc. 1 at 14 ¶ 42; *id.* at 15-16 ¶¶ 47-48).

[115]Doc. 1 at 18 ¶ 55.

[116]Doc. 10 at 20.

[117]*Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997).

[118]*Bartleson v. United States*, 96 F.3d 1270, 1277 (9th Cir. 1996) (quoting *Landreth v. United States*, 850 F.2d 532, 533 (9th Cir.1988)).

[119]Doc. 1 at 16 ¶ 48.

-18-

discovery rule is of no avail to NTC because it does not allege that it was injured by the 2002 delegation, but rather by actions taken pursuant to that delegation.[120]

The Ninth Circuit's decision in *Wind River Mining Corp. v. United States*,[121] controls the court's analysis. The plaintiff there filed a complaint in 1989 challenging a decision of the United States Bureau of Land Management ("BLM") ten years earlier that classified certain lands as "Wilderness Study Areas."[122] The Ninth Circuit ruled that the challenge was not time barred under § 2401(a)'s six-year statute of limitations, holding that "a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision to the specific challenger."[123] "The government should not be permitted to avoid all challenges to its actions, even if ultra vires, simply because the agency took the action long before anyone discovered the true state of affairs."[124]

NTC's complaint alleges injuries caused in part by the Board's lack of authority to delegate its authority in 2002 without substantive standards.[125] At this juncture, the court cannot determine when the statute of limitations began to run on this claim because the record does not reveal the first time that this allegedly ultra vires delegated authority was applied to NTC.[126] The court reserves this issue for a later stage of the proceedings after the parties have had the opportunity to conduct discovery.

---

[120]Doc. 32 at 18.

[121]946 F.2d 710 (9th Cir.1991).

[122]*Id.* at 711.

[123]*Id.* at 716.

[124]*Id.* at 715.

[125]*See, e.g.,* Doc. 1 at 16 ¶¶ 47-48.

[126]*See N. Cty. Cmty. All., Inc. v. Salazar*, 573 F.3d 738, 743 (9th Cir. 2009) ("The Alliance could have had no idea in 1993 that the NIGC's approval of the Nooksacks' Ordinance would affect them in 2006 by leading to construction of a casino thirty-three miles from the Nooksack reservation.").

**4.** **Even though the Board's refusal to rescind Anderson's authority is committed to agency discretion by law, the court has jurisdiction to review NTC's ANILCA claim**

The APA, "which generally provides the standards of review for agency action, also withdraws jurisdiction to review agency decisions that are 'committed to agency discretion by law.'"[127]  Defendants argue that the court lacks jurisdiction over NTC's challenges to the Board's refusal to rescind Anderson's authority because that decision is committed to the Board's discretion by law.[128]  According to Defendants, "[n]either the APA nor ANILCA provides guidance or restrictions on the Board's ability to delegate its authority."[129]

Defendants rely heavily on *Drakes Bay Oyster Co. v. Jewell*.[130]  In *Drakes Bay*, the plaintiff requested an extension of a permit pursuant to a Congressional enactment, "Section 124," that provided in relevant part that "'notwithstanding any other provision of law, the Secretary of the Interior is authorized to issue a special use permit with the same terms and conditions as the existing authorization.'"[131]  The plaintiff challenged the denial of its requested permit, arguing that the Secretary violated various federal laws, including Section 124 and the National Environmental Policy Act ("NEPA").  The Ninth Circuit held that it lacked jurisdiction to hear the plaintiff's Section 124 challenge because that law did not provide any restrictions on the Secretary's discretion to act.[132]

---

[127]*Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) (quoting 5 U.S.C. § 701(a)(2)).

[128]Doc. 10 at 20-22; Doc. 32 at 15-17.

[129]Doc. 10 at 21.

[130]747 F.3d 1073 (9th Cir. 2013).

[131]*Id.* at 1077-78 (citing Department of the Interior Appropriations Act, Pub.L. No. 111–88, § 124, 123 Stat. 2904, 2932 (2009) ("Section 124")).

[132]*Id.* at 1085 ("Had Congress wanted to express a view on whether the Secretary should consider the Department's policies on wilderness or other criteria, it would have said so. It did not, but rather gave the Secretary the discretion to decide.").

The court did not hold, however, that it lacked jurisdiction to consider whether the Secretary's action ran afoul of other laws, such as NEPA.  To the contrary, the Ninth Circuit held that "even where the substance or result of a decision is committed fully to an agency's discretion, 'a federal court has jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions.'"[133] Under such circumstances, the only challenge over which courts lack jurisdiction is one that seeks review of "an alleged abuse of discretion regarding the making of an informed judgment by the agency."[134]

"When a court is asked to review agency action in instances where considerable discretion is committed by statute to an official, the court lacks jurisdiction due to the provisions of § 701(a)(2) only when the agency action of which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent."[135]  NTC is correct that Section 804's subsistence priority is a statutory standard under which the court can review NTC's claim that the Board abused its discretion in denying NTC's request to revoke Anderson's authority. 5 U.S.C. § 701(a)(2) does not deprive the court of jurisdiction to consider that claim.

### 5.    NTC lacks standing to challenge the 2015 closure order

Defendants next argue that NTC lacks standing to challenge the emergency closure order because that order expired before this action was filed.[136]  The "irreducible constitutional minimum of standing:" contains the following three elements: (1) the plaintiff must have suffered an "injury in fact;" (2) "there must be a causal connection

---

[133]*Id.* at 1082 (quoting *Ness Inv. Corp. v. U.S. Dep't of Agr., Forest Serv.*, 512 F.2d 706, 715 (9th Cir.1975)).

[134]*Id.* (citation and internal quotation marks omitted).

[135]*Strickland v. Morton*, 519 F.2d 467, 470 (9th Cir. 1975).

[136]Doc. 32 at 13.

between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[137]  Defendants' argument focuses on the first element, stating that "at the time this action was commenced, [NTC] suffered no injury as a result of" the closure order.[138]

NTC responds by asserting that its complaint alleges the following injuries that flow from the emergency order: its members were prevented "from realizing an important subsistence opportunity," they were prevented from harvesting enough salmon to meet their subsistence needs, and their subsistence way of life was compromised.[139]  NTC argues that the harm to its members' subsistence way of life caused by the lost fishing opportunity is an ongoing injury.[140]

Assuming without deciding that NTC and its members are suffering an ongoing injury caused by the 2015 closure order, the court is not convinced that the third element of standing is present here: that NTC's injury will likely be redressed by a favorable decision.  NTC is seeking a declaratory judgment stating that the Board's failure to overturn Anderson's emergency closure in 2015 violated ANILCA and the APA.[141]  Even if NTC obtains this remedy it would not turn back the clock to allow NTC's members to harvest sufficient salmon to meet their subsistence needs for the 2015 fishing season.

---

[137]*Lujan*, 504 U.S. at 560-61 (citations and internal quotation marks omitted).

[138]Doc. 32 at 13.

[139]Doc. 36 at 2.

[140]*Id.*

[141]Doc. 1 at 18 ¶ 2; 19 ¶ 7.

NTC argues that its requested declaratory relief "will prevent the same unlawful conduct in 2016,"[142] but the court is not so sure. Emergency closure orders are issued for any number of particularized reasons, based on a finding that closing the fishery is "necessary to ensure the continued viability of a fish or wildlife population" or to "continue subsistence uses of fish or wildlife, or for public safety reasons."[143] NTC does not allege facts that indicate the Board will likely repeat its 2015 action in 2016. As such, NTC has not alleged facts that show that a declaration that the 2015 closure order was unlawful will remedy any of its current or future injuries. Because this court may not render advisory opinions,[144] it lacks jurisdiction to consider NTC's challenge to the 2015 closure order.

### 6. Whether NTC's § 706(1) claims seek to compel discrete actions that the agency is required to take

Defendants' final jurisdictional challenge argues that NTC lacks standing under 5 U.S.C. § 706(1) to compel the Board to act in various ways.[145] Section 706(1) governs challenges to agency inaction and allows aggrieved parties to compel "agency action unlawfully withheld or unreasonably delayed."[146] Challenges to agency actions, in contrast, are governed by § 706(2).[147]

---

[142]Doc. 36 at 4.

[143]50 C.F.R. § 100.19(a).

[144]*See Coalition for a Healthy Cal. v. F.C.C.*, 87 F.3d 383, 386 (9th Cir.1996) (recognizing that "federal courts have never been empowered to render advisory opinions").

[145]Doc. 10 at 22 (citing several of NTC's ANILCA claims, Doc. 1 at 15-16 ¶¶ 46-48, and APA claims, Doc. 1 at 17-18 ¶ 53). *See Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1113 (9th Cir. 2005) (holding that a plaintiff's failure to sufficiently plead a § 706(1) claim deprives it of standing).

[146]5 U.S.C. § 706(1). *See Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 62 (2004) ("The APA provides relief for a failure to act in § 706(1)."). "A 'failure to act' is not the same thing as a 'denial.' The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request—for example, the failure to promulgate a rule or take some decision by a statutory deadline." *Id.* at 63.

[147]5 U.S.C. § 706(2).

In *Norton v. S. Utah Wilderness All.* ("*SUWA*"),[148] the Supreme Court considered whether the BLM could be compelled to act in conformance with its statutory obligation under the Federal Land Policy and Management Act of 1976 ("FLPMA") to manage certain areas "in a manner so as not to impair the suitability of such areas for preservation as wilderness."[149]  Among other things, the plaintiffs alleged that BLM's failure to ban the use of off-road vehicles violated this nonimpairment obligation.[150]  Their suit challenged this failure to act pursuant to 5 U.S.C. § 706(1).[151]

The Supreme Court rejected the plaintiffs' challenge, holding that § 706(1) may only be used to compel "a *discrete* agency action that [the agency] is *required to take*."[152]  Section 706(1) does not provide a cause of action for suits that allege "[g]eneral deficiencies in compliance"[153] or seek "wholesale improvement of [a government] program by court decree;"[154] it empowers "a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'"[155]  The Court ruled that, under this standard, the plaintiffs' claim failed because the FLPMA was only "mandatory as to the object to be achieved.  . . . .  It assuredly does not mandate, with the clarity necessary to support judicial action under § 706(1), the total exclusion of [off-road vehicle] use."[156]

---

[148]542 U.S. 55 (2004).

[149]43 U.S.C. § 1782(c).

[150]*SUWA*, 542 U.S. at 60.

[151]*Id.* at 61.

[152]*Id.* at 64 (emphasis in original).

[153]*Id.* at 66.

[154]*Id.* at 64 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990)).

[155]*Id.* (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)) (emphasis in original).

[156]*Id.* at 66.

In *Ctr. for Biological Diversity v. Veneman*,[157] the plaintiffs filed a § 706(1) action to compel the U.S. Forest Service to take certain rivers and streams into account while planning for the use and development of federal land, as required by the Wild and Scenic Rivers Act ("WSRA").[158]  The Ninth Circuit affirmed the district court's dismissal of this claim for lack of jurisdiction, holding that the plaintiffs lacked standing under § 706(1) because their claim was "indistinguishable from the one rejected by the Court in *SUWA*."[159]

In accordance with this line of authority, Defendants argue that NTC lacks standing under § 706(1) to seek orders compelling Defendants to take the actions discussed below.

### a.  Paragraph 46 of the complaint does not assert a specific claim for relief

Defendants' first challenge targets paragraph 46 of the complaint; they argue that this paragraph seeks a broad order compelling the Board to "provide a priority under ANILCA," generally.[160]  According to Defendants, this claim fails because ANILCA does not specify how the Board must act in order to prioritize subsistence uses.[161]

This argument misses the mark because paragraph 46 contains background information and does not assert a specific cause of action.  Paragraph 46 merely states that Defendants violated ANILCA "in the following ways:" and then paragraphs 47 through 51 specify the alleged violations.  Defendants' argument that paragraph 46

---

[157]394 F.3d 1108 (9th Cir. 2005).

[158]16 U.S.C. § 1276(d)(1).

[159]394 F.3d at 1113.

[160]Doc. 10 at 22.

[161]*Id.* at 23-24.

-25-

seeks a broad order compelling Defendants to generally comply with ANILCA's subsistence priority provisions is unsupported by the complaint.[162]

### b. NTC has standing to seek an order compelling the Board to establish "frameworks" for its delegatee

Defendants next target paragraph 47 of the complaint, which seeks an order compelling Defendants to promulgate substantive standards to guide the in-season manager's exercise of his delegated authority.[163]  NTC alleges that Defendants' failure to promulgate such standards violates Section 804 of ANILCA.  But as Defendants point out, ANILCA contains no such requirement.  NTC effectively concedes this point in its opposition by not relying on ANILCA, but rather a regulation, 50 C.F.R. § 100.10(d)(6).

Despite this pleading deficiency, it is clear that NTC's complaint gives Defendants fair notice[164] that it is asserting a claim based on 50 C.F.R. § 100.10(d)(6) because Defendants' motion to dismiss addresses the merits of a claim under that regulation.[165]  Therefore, in the interest of justice, the court will construe NTC's complaint as asserting a claim that Defendants' failure to promulgate substantive standards to guide the in-season manager's decisions violates 50 C.F.R. § 100.10(d)(6).[166]

50 C.F.R. § 100.10(d)(6) states that the Board may "delegate to agency field officials the authority to set harvest and possession limits, define harvest areas, specify

---

[162]This relief is also not requested in the "Relief Sought" section of NTC's complaint. Doc. 1 at 18-19 ¶¶ 1-10.

[163]Doc. 1 at 15-16 ¶ 47.  *See also id.* at 18 ¶ 1, 19 ¶ 5.

[164]*Twombly*, 550 U.S. at 555 ("Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (citation and internal quotation marks omitted).

[165]Doc. 10 at 24.

[166]Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

methods or means of harvest, specify permit requirements, and open or close specific fish or wildlife harvest seasons *within frameworks established by the Board*."[167] Defendants argue that this language does not require the Board to establish any "frameworks;" it merely requires the delegatee to "comply with any frameworks that the Board establishes" should the Board, in its discretion, establish such frameworks.[168] NTC reads the regulation differently, arguing that it establishes that the "Board *may* delegate authority, but if it chooses to do so, the delegation must be established within frameworks set by the Board."[169]

If 50 C.F.R. § 100.10(d)(6) were ambiguous, the Board's interpretation of its own regulation would be given deference.[170]  It is not; it plainly requires the Board to create "frameworks" to guide its delegatee's actions.[171]  Section 100.10(d)(6) provides permissive authority to the Board to delegate certain authority to field officials within "frameworks established by the Board."  The delegation power is permissive, but the frameworks are mandatory if the Board exercises that power.  Because this is a discrete agency action demanded by law, NTC has standing to seek an order compelling the Board to issue § 100.10(d)(6) "frameworks."[172]

NTC's complaint goes too far, however, in seeking an order directing the Board to promulgate regulations.[173]  NTC has not established that the frameworks required by

[167]50 C.F.R. § 100.10(d)(6) (emphasis added).

[168]Doc. 10 at 24; Doc. 32 at 21.

[169]Doc. 21 at 20 (emphasis in original).

[170]*Auer*, 519 U.S. at 461.

[171]*Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) ("*Auer* deference is warranted only when the language of the regulation is ambiguous.").

[172]*SUWA*, 542 U.S. at 65 ("[W]hen an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be.").

[173]Doc. 1 at 19 ¶ 5.

§ 100.10(d)(6) must come in the form of regulations.  The court lacks jurisdiction over that request.

### c.    NTC lacks standing to seek an order compelling the Board to "oversee" its delegatee's actions

Defendants next challenge NTC's claim that the Board is violating ANILCA by not overseeing the in-season manager's actions.[174]  Paragraph 47 of the complaint alleges that the Board violated ANILCA by failing "to exercise any independent oversight on actions taken by the in-season manager."[175]  Paragraph 49[176] contains a similar allegation.  Defendants argue that "[n]o statute or regulation compels the Board to exercise oversight, as [NTC] has requested that the court do."[177]  NTC effectively concedes this point by not responding to Defendants' argument.

Because NTC does not identify any legal authority that imposes a mandatory requirement on the Board to "oversee" its delegatee, NTC lacks standing to seek an order compelling the Board to so act.

### d.    NTC lacks standing to seek an order compelling Defendants to develop an operational plan

Paragraph 53 of the complaint alleges that Anderson's "failure to develop an operation plan . . . for a subsistence gillnet fishery in the Kenai River" was "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with 5 U.S.C. § 706(2)(A)."[178]  Because NTC is challenging a failure to act, this cause of action is

---

[174]Doc. 10 at 25-26.

[175]Doc. 1 at 15 ¶ 47.

[176]*Id.* at 16 ¶ 49 ("The [Board] delegated authority to Mr. Anderson, the in-season manager of the Kenai National Wildlife Refuge, to develop an operational plan for a community subsistence gillnet on the Kenai River.  The [Board] failed to provide any . . . oversight to the in-season manager in carrying out this delegation of authority.").  *See also id.* at 18 ¶ 1; 19 ¶ 4.

[177]*Id.* at 26.

[178]*Id.* at 17-18 ¶ 53.

governed by § 706(1), not § 706(2)(A).[179]  Defendants argue that NTC lacks standing to

compel the Board to develop an operational plan because 50 C.F.R.

§ 100.27(e)(10)(iv)(J) requires NTC to develop the operational plan, not the in-season

manager.[180]  NTC does not respond to this argument, effectively conceding that

Defendants are correct.

### e.    NTC has standing to seek an order compelling the in-season manager to decide its Kenai gillnet permit application, but not one compelling him to grant it

Paragraphs 49 and 53 of the complaint allege that Anderson's failure to issue a

permit for a subsistence gillnet fishery in the Kenai River violates ANILCA and the

APA.[181]  Defendants argue that NTC lacks standing to seek an order compelling the

Board to issue a permit to NTC for the 2016 fishing season,[182] as it requests.[183]

Defendants are correct.

As an initial matter, the court notes that NTC's complaint is again deficient.

NTC's complaint merely alleges that the actions Anderson took with regard to the Kenai

gillnet permit violate section 804 of ANILCA[184] and the APA, 5 U.S.C. § 706(2)(A).[185]  In

opposition to Defendants' motion to dismiss, NTC relies on neither of these statutes; it

relies on the Kenai gillnet fishery regulation, 50 C.F.R. § 100.27(e)(10)(iv)(J).[186]  Despite

this pleading deficiency, it is again clear that NTC's complaint gives Defendants fair

---

[179]*See SUWA*, 542 U.S. at 62.

[180]Doc. 10 at 26.

[181]Doc. 1 at 16 ¶ 49; 17-18 ¶ 53.

[182]Doc. 10 at 26-27.

[183]Doc. 1 at 19 ¶ 6.

[184]*Id.* at 17 ¶ 49.

[185]*Id.* at 18 ¶ 53.

[186]Doc. 21 at 21.

-29-

notice that it is asserting a claim based on that regulation because Defendants' motion addresses the merits of such a claim.[187]  In the interest of justice, the court will construe NTC's complaint as asserting a claim that Defendants have violated 50 C.F.R. § 100.27(e)(10)(iv)(J).

The court lacks jurisdiction over NTC's request for an order compelling Defendants to issue the Kenai gillnet permit because nothing in 50 C.F.R. § 100.27(e)(10)(iv)(J) requires the in-season manager to issue that permit.  Instead, the regulation gives the in-season manager discretion to determine whether an operational plan is meritorious.  NTC does not allege, as it must to have standing to compel the issuance of its permit, that Anderson has determined that its operational plan is meritorious.

That is not the end of the story, however, because NTC also alleges that Anderson abused his authority by not issuing a decision on NTC's application based on the merits of its operational plan.[188]  NTC argues that "[a]t the very least" the regulation requires Anderson to issue a decision on a gillnet permit application.  The in-season manager has two options: (1) if he finds the operational plan meritorious, he must award the permit; or (2) if he finds the operational plan unmeritorious, he must deny the permit.[189]  Defendants disagree, arguing that the regulation provides merely that the "in-season manager *should* award" a permit based on the merits of the operational plan, an interpretation that allows the in-season manager discretion to sit on an application indefinitely or deny a permit without regard to the merits of the operational plan.

Defendants' interpretation is inconsistent with the language of the regulation, and therefore is entitled to no deference.  The regulation contains mandatory language.  It

---

[187]Doc. 10 at 26.

[188]Doc. 1 at 16-17 ¶ 49.

[189]Doc. 21 at 21.

states that one Kenai gillnet permit "*will be awarded* by the [f]ederal in-season fishery manager . . . based on the merits of the operational plan"[190] and, once the permit is issued, "[f]ishing will be allowed from June 15 through August 15 on the Kenai River unless closed or otherwise restricted by [f]ederal special action."[191]  Under this framework, the in-season manager lacks discretion to withhold a ruling on a permit application indefinitely or to base his permit decision on a consideration other than "the merits of the operational plan."

Finally, Defendants argue that NTC's claim is moot because the Board, at its July 28 meeting, granted NTC the precise relief it is seeking in this case.[192]  To the contrary, the Board merely ordered Anderson to "work on an operational plan" with NTC for a Kenai River gillnet.[193]  More than eight months have passed since this order was issued and Anderson still has not decided NTC's application.  To put this in context, Anderson approved NTC's Kasilof permit in "about six weeks."[194]  The Board's July 28 order did not moot NTC's claim.

**B.      Defendants' Rule 12(b)(6) Attacks**

**1.      NTC's APA cause of action fails to state a claim**

"There is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.'"[195]  "The APA is merely a procedural vehicle for review of agency action; it does not confer a substantive

---

[190]50 C.F.R. § 100.27(e)(10)(iv)(J)(2) (emphasis added).

[191]50 C.F.R. § 100.27(e)(10)(iv)(J)(4).

[192]Doc. 32 at 22.

[193]Doc. 23-4 at 11.

[194]Doc. 23-4 at 8.

[195]*El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991) (quoting *Lujan*, 497 U.S. at 883).

1 right to be free from arbitrary agency action."[196]  Under this standard, each of NTC's

2 four APA claims fail because none identifies a statute, other than the APA itself, that

3 forms the legal basis of the claim.

4 **2.    NTC's remaining Section 804 claim**

5 The only remaining Section 804 claim is NTC's claim that the Board violated

6 ANILCA when it voted not to revoke Anderson's authority.[197]  In order to state such a

7 claim, NTC must plausibly allege that revoking Anderson's authority was "necessary to

8 provide for the priority" for subsistence uses set forth in Section 804.[198]

9 Defendants suggest that NTC is required to allege that nonsubsistence users

10 have been "granted a conflicting right on federal waters of the Kenai."[199]  This is

11 certainly one type of claim that may be brought under ANILCA,[200] but not the exclusive

12 one.  For example, the Ninth Circuit has recognized that Section 804 claims also lie

13 where subsistence uses are restricted without that being necessary "to protect the

14 continued viability of fish and wildlife populations,"[201] where subsistence use restrictions

---

[196]*Furlong v. Shalala*, 156 F.3d 384, 394 (2d Cir. 1998).

[197]Doc. 1 at 17 ¶¶ 50-51.

[198]16 U.S.C. § 3117(a).

[199]Doc. 10 at 30.

[200]*See Kenaitze Indian Tribe v. State of Alaska*, 860 F.2d 312, 318 (9th Cir. 1988) ("This is a case involving a clash of lifestyles and a dispute over who gets to fish.  Congress, using clear language, has resolved this dispute in favor of the Kenaitze who choose to pursue the traditional subsistence way of life by giving them priority in federal waters.  The state has attempted to take away what Congress has given, adopting a creative redefinition of the word rural, a redefinition whose transparent purpose is to protect commercial and sport fishing interests.").

[201]*Ninilchik Traditional Council*, 227 F.3d at 1193 (citing *United States v. Alexander*, 938 F.2d 942, 945 (9th Cir. 1991)).

-32-

are implemented without the application of the three criteria set out in Section 804,[202] or where subsistence users are denied "a meaningful use preference."[203]

NTC's complaint alleges that Anderson has made several decisions that violate Section 804, in particular his decision to "close the fishing season for Chinook salmon on the Kenai River before it began, and keep it closed throughout the season"[204] and his decision not to issue a Kenai gillnet permit.[205] But nothing in NTC's complaint plausibly asserts that Anderson's authority over such decisions must be revoked in order for Defendants to honor their obligations under Section 804—because, for example, Anderson intentionally violated Section 804 and will continue to intentionally violate Section 804. NTC's claim that Section 804 requires the Board to rescind Anderson's authority lacks merit.

## V. CONCLUSION

Based on the preceding discussion, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART** as follows: Defendants' motion to dismiss NTC's claim that the Board violated 50 C.F.R. § 100.10(d)(6) by not establishing "frameworks" to guide the delegation of its authority is **DENIED**; Defendants' motion to dismiss NTC's claim that the in-season manager's failure to decide its Kenai gillnet permit application based on the merits of the operational plan violates 50 C.F.R. § 100.27(e)(10)(iv)(J) is **DENIED**; in all other respects, Defendants' motion is **GRANTED**.

DATED this 17th day of April 2016.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[202]*Id.* (citing *Alexander*, 938 F.2d at 946 n.7).

[203]*Id.*

[204]Doc. 1 at 16 ¶ 48.

[205]*Id.* ¶ 49.

-33-