# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

Ninilchik Traditional Council,

    Plaintiff,

vs.

Tim Towarak, *et al.*,

    Defendants.

3:15-cv-00205 JWS

**ORDER AND OPINION**

[Re: Motion at Docket 51]

## I. MOTION PRESENTED

At docket 51 plaintiff Ninilchik Traditional Council ("NTC") moves for a preliminary injunction to enforce its rights under the Alaska National Interest Lands Conservation Act ("ANILCA") and, derivatively, a federal regulation that provides that "[r]esidents of Ninilchik may harvest Sockeye, Chinook, Coho, and Pink salmon with a gillnet in the [f]ederal public waters of the Kenai River."[1]  That regulation provides that a

---

[1] 36 C.F.R. § 242.27(e)(10)(iv)(J) (Department of Agriculture regulation); 50 C.F.R. § 100.27(e)(10)(iv)(J) (Department of the Interior regulation).  Because these two regulations are identical, for ease of reference the court will reference the Department of Agriculture regulation only.

permit to operate the Kenai River gillnet must be "awarded by the [f]ederal in-season fishery manager . . . based on the merits of the operational plan."[2] Although the regulation became effective in May 2015 and provided Ninilchik residents with an opportunity to operate the gillnet in the Kenai River beginning on June 15, 2015, the U.S. Fish and Wildlife Service ("FWS") in-season fishery manager, Jeffry Anderson ("Anderson"), has still not issued a gillnet permit to the Ninilchik residents.

NTC's preliminary injunction motion seeks an order requiring Anderson to grant its application for a Kenai River gillnet permit. Defendants Tim Towarak, Sally Jewell, and Tom Vilsack ("Defendants") oppose the motion at docket 58. NTC replies at docket 70. Oral argument was heard on July 22, 2016.

## II.  BACKGROUND

The court has described the background giving rise to this litigation in detail in the order at docket 40. It need not be repeated here. The following is a summary of NTC's efforts to obtain a Kenai River gillnet permit since the order at docket 40 was issued.

On April 28, 2016, NTC, Anderson, the BIA Office of Subsistence Management, and the Southcentral Regional Advisory Council met to discuss NTC's operational plan.[3] Anderson later told NTC that he wanted their operational plan to address "[w]hen, where, and how a gillnet will be fished on the Kenai River" (1) "that will avoid fishing the net on important spawning areas for Chinook, Sockeye, or Coho [S]almon"; (2) "within the current [f]ederal regulatory framework that does not allow harvest of early-run Chinook Salmon except through use of rod and reel, and requires release of Rainbow Trout and Dolly Varden greater than 18 inches"; (3) "consistent with Federal regulations which adopt by reference regulations in Alaska code for the Kenai River Special Management Area, including motorboat and horsepower restrictions, seasonal

---

[2]36 C.F.R. § 242.27(e)(10)(iv)(J)(2); 50 C.F.R. § 100.27(e)(10)(iv)(J)(2).

[3]Doc. 51-2 at 4 ¶ 7; doc. 58 at 4.

-2-

riverbank closures, anchoring prohibitions and other regulations"; and (4) that avoids "conflicts with other river users and avoid[s] creating a navigation or public safety hazard."[4] These are the same or similar concerns to those that FWS raised to the Federal Subsistence Board ("FSB") in opposition to the Kenai gillnet regulation before it was promulgated,[5] and that FWS is currently raising as it simultaneously seeks reconsideration of that regulation[6] and an amendment that bans the Kenai River gillnet.[7]

After NTC submitted an initial draft operational plan to Anderson in early May, Anderson responded with his comments and concerns.[8] NTC retained Dr. Gregory T. Ruggerone, a fisheries expert, to help it allay Anderson's concerns.[9] NTC then submitted to Anderson a revised operational plan.[10]

In a letter dated June 27, Anderson denied NTC's operational plan.[11] Anderson stated in pertinent part that he could not approve the Kenai River gillnet permit because (1) NTC's plan did not provide for conservation of Chinook Salmon, Rainbow Trout, and Dolly Varden, and (2) "the use of a non-selective gear type in the Kenai River will inevitably result in conflicts with existing [f]ederal subsistence regulations that do not allow for the harvest of early-run Chinook Salmon and require the release of Rainbow Trout and Dolly Varden larger than 18 inches."[12] The next day, June 28, NTC submitted

---

[4] Doc. 54-2.

[5] *See, e.g.,* doc. 54-1 at 6-7.

[6] Doc. 10-5.

[7] Doc. 54-1.

[8] Doc. 58-1.

[9] Doc. 51-7 at 3.

[10] Doc. 51-4; doc. 51-5.

[11] Doc. 51-6.

[12] Doc. 51-6 at 1.

to the FSB an emergency special action request ("SAR") seeking relief from Anderson's denial.[13] The FSB plans to consider NTC's SAR during its meeting on July 26-28.[14]

NTC's preliminary injunction seeks relief based on its claims that Anderson's denial of its operational plan violates its rights under Section 804 of ANILCA.[15]

### III. STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right."[16] A court considering a request for a preliminary injunction "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[17] A plaintiff may obtain a preliminary injunction by establishing that: (1) it is "likely to succeed on the merits;" (2) it is "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public interest."[18] In addition, a preliminary injunction may be granted under the Ninth Circuit's "sliding scale" approach to the *Winter* test if the second and fourth *Winter* elements are satisfied and the plaintiff raises "serious questions" as to the merits and "the balance of hardships tips sharply in [its] favor."[19]

---

[13] Doc. 51-7.

[14] Doc. 58-2.

[15] 16 U.S.C. § 3114. *See* doc. 61 at 1-2 ¶ 1, 27-28 ¶ 91, 29-30 ¶¶ 95-96.

[16] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[17] *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987).

[18] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[19] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted). *See also Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103 n.4 (9th Cir. 2016); *Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013).

## IV. DISCUSSION

Because NTC has not exhausted its administrative remedies, NTC has not raised serious questions going to the merits whether Anderson unlawfully denied its operational plan. Under the exhaustion of remedies doctrine, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed . . . remedy has been exhausted."[20] "Of paramount importance to any exhaustion inquiry is congressional intent. Where Congress specifically mandates, exhaustion is required."[21]

NTC's claims that are at issue here arise under ANLICA, which predicates district court review of agency action "upon exhaustion of any . . . [f]ederal . . . administrative remedies which may be available."[22] The court is powerless to grant NTC the relief it seeks until it exhausts its administrative remedies before the FSB.

NTC raises three arguments as to why exhaustion should be excused. First, it argues that exhaustion is futile because the FSB has already spoken regarding the merits of the gillnet. It relies on *Ringer v. Schweiker*,[23] which involved a ruling by the Secretary of Health and Human Services that insurance carriers could not pay Medicare claims for a certain operation because the operation was not "reasonable and necessary."[24] "The ruling purported to prohibit ALJs and the Appeals Council from determining that benefits could be paid for [the] operations, and ALJs have, since the

---

[20]*McKart v. United States*, 395 U.S. 185, 193 (1969) (citations and internal quotation marks omitted).

[21]*McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citations and internal quotation marks omitted).

[22]16 U.S.C. § 3117(a).

[23]NTC cites the Ninth Circuit's opinion at 684 F.2d 643 (9th Cir. 1982), but this opinion is not operative. The Ninth Circuit later amended the opinion on February 1, 1983, and accordingly the operative version of the opinion is located at 697 F.2d 1291 (9th Cir. 1982), *rev'd on other grounds sub. nom. in Heckler v. Ringer*, 466 U.S. 602 (1984).

[24]697 F.2d at 1292.

ruling, denied all requests for benefits without a hearing."[25] The Ninth Circuit held that exhaustion was not required because the agency had already concluded that its decision was final, indicating that the agency believed that an appeal would be worthless both to the agency and the claimant.[26]

The facts presented here are different from the facts in *Ringer*. NTC is correct that the FSB has issued final regulations that reject many of the concerns that the FWS raises in opposition to NTC's operational plan. For instance, the FSB acknowledged that Rainbow Trout and Dolly Varden 18 inches or longer might be incidentally caught in the gillnet, but instead of shutting down the gillnet on that basis it provided that such fish must merely be released.[27] And after considering the FWS' conservation concerns, the FSB concluded that a gillnet permit "will be awarded" based specifically on the merits of a proposed operational plan, not on the conceptual merits of the gillnet fishery as a whole.[28] But, unlike the agency in *Ringer*, the FSB has not prohibited further administrative consideration of the merits of its decision. In fact, NTC is seeking a preliminary injunction in part because it is concerned that the FSB will change its mind about permitting a gillnet. The court cannot conclude that exhaustion would be futile because the FSB's decision on NTC's SAR is predetermined.

Second, NTC argues that its SAR before the FSB is futile because the FSB is biased in favor of the FWS.[29] This argument is unpersuasive because NTC has not shown that the FSB is so biased that it simply rubber stamps the FWS' actions. Notably, the FSB rejected the FWS' conclusions regarding the merits of a Kenai River gillnet when it promulgated the gillnet regulations by a five to three vote.

---

[25] 697 F.2d at 1293.

[26] *Id.* at 1295-96.

[27] 36 C.F.R. § 242.27(e)(10)(iv)(J).

[28] 36 C.F.R. § 242.27(e)(10)(iv)(J)(2).

[29] Doc. 70 at 3.

Finally, NTC also argues that exhaustion is not required because of the FSB's "unreasonable delay."[30] While the court understands the need for prompt action by the FSB, on the record presented the court cannot conclude that the delay between NTC's June 28 SAR and the FSB's scheduled meeting on July 26-28 is so unreasonable as to excuse the exhaustion requirement. The court presumes that the FSB will issue its decision promptly, and NTC has not submitted any evidence showing otherwise. NTC has failed to demonstrate that exhaustion should be excused because of the FSB's unreasonable delay.

## V. CONCLUSION

Based on the preceding discussion, NTC's motion at docket 51 for a preliminary injunction is DENIED.

DATED this 22nd day of July 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[30]*Id.* at 4.